# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN R. COLBETZOR, | ) | CASE NO. 5:16-cv-3058 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| JOHN BEVERLIN, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court are two dispositive motions. Defendant Andre D. Moore ("Moore") has moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint. (Doc. No. 5 ["Moore MTD"].) Plaintiff Kevin R. Colbetzor ("Colbetzor" or "plaintiff") opposes the motion. (Doc. No. 9 ["Moore MTD Opp'n"].) Defendants John Beverlin, Akron Board of Education, Thomas Kekela, Lestor Nash, Todd Wammes, Lonnie Kammer, and David James (collectively, "the Akron defendants") have moved under Rule 12(b)(6) for dismissal of the amended complaint. (Doc. No. 14 ["Akron MTD"].)[1] Plaintiff opposes this motion, as well, (Doc. No. 17 ["Akron MTD Opp'n"]), and the Akron defendants have filed a reply. (Doc. No. 21 ["Akron MTD Reply"].) For the following reasons, the Akron defendants' motion to dismiss the amended complaint is denied, and Moore's motion to dismiss the original complaint is denied as moot.

---

[1] At the time of filing their dispositive motion, the Akron defendants also moved *instanter* to exceed the page limitations for a dispositive motion. (Doc. No. 20.) The motion to exceed the page limitations is granted.

## I.  BACKGROUND

At all times relevant to the amended complaint, plaintiff was employed by the Akron Public Schools ("APS") as a custodian stationed at the Miller South High School for Visual and Performing Arts ("Miller South"). (Doc. No. 6 (Amended Complaint ["Am. Compl."]) ¶ 16.) His employment was subject to a collective bargaining agreement. (*Id.*) Plaintiff was also the proprietor of two local businesses named "Colby's Auction House" and "Weekend Market." (*Id.* ¶ 18.) Plaintiff reported to defendant Lonnie Kammer ("Kammer"), the head custodian at Miller South. (*Id.* ¶ 16.) Defendant Jon Beverlin ("Beverlin") is employed by APS as "Coordinator of Custodial Services and was Lonnie Kammer's supervisor." (*Id.* ¶ 16.) Defendant Thomas Kekela ("Kekela") holds the position of Facility Services Supervisor for APS, and defendant Moore is a "commissioned police officer employed by the City of Akron and also the APS." (*Id.*)

In the spring of 2015, Kammer "took it upon himself" to conduct an investigation into missing items purportedly taken from Miller South. (*Id.* ¶ 18.) As part of this informal investigation, Kammer visited the Weekend Market, where he observed "a Styrofoam box full of combination locks." (*Id.*) Kammer "speculated that these locks were stolen from Miller South[,]" and contacted Beverlin "telling him the locks looked like locks from Miller South." (*Id.*) After discussing the matter with some or all of the individual defendants, Beverlin directed Kammer to return to the Weekend Market and purchase some of the locks. (*Id.* ¶ 20.) Kekela accompanied Kammer to plaintiff's store. After purchasing the locks, Kekela instructed Kammer to attempt to open the locks using his custodial combination lock key, but "it did not open the locks." (*Id.* at ¶¶ 20-21.)

Following the recognizance mission to purchase the locks, Beverlin and/or Kammer, after conversations with the other individual defendants, met with Moore and related to him their suspicion that plaintiff had stolen the locks. Moore prepared an incident report based exclusively on the information conveyed to him by Beverlin, who was identified in the incident report as "Rp" (reporting party). (*Id*. ¶¶ 26-29.) The "officer narrative" section of the incident report was reproduced in the amended complaint, and provided as follows:

> The Rp stated that it was brought to his attention that the suspect [Kevin Colbetzor] have (sic) been taking items out of the above location [Miller South school at 1055 East Avenue, Akron, Ohio 44307] and selling them at Colby's Flea Market and Antiques (owner)." (sic). The Rp stated that he got several complaints that items were left inside the building and would be missing within days. The Rp stated that he was told by several people that the suspect had a large box of school locks that looked like the ones missing from Miller-South being sold at the suspect's business. The Rp stated that he and another employee went out to the suspect's business and bought two locks. The Rp stated that the master key at Miller-South opened both locks. He also stated that according to their records and the numbers on the locks, the locks are registered to Miller-South. The Rp also stated that the suspect took the original combination tags off and replaced them with paper tags that were handwritten in ink.

(*Id*. ¶ 28.) Plaintiff alleges that Moore failed to conduct any investigation before or after he filed this incident report, and that neither Moore nor any other defendant ever spoke with him about the missing locks. (*Id*. ¶¶ 19, 29.)

On May 13, 2015, Beverlin, "without talking to any prosecutor or getting approval," filed two criminal complaints against plaintiff in the case styled "*State of Ohio v. Kevin R. Colbetzor*, Case No. 2015 CRB 04739." (*Id*. ¶ 32.) Through this criminal action, plaintiff was charged with two counts of receiving stolen property, a first degree misdemeanor. (*Id*.) Moore signed the field arrest/summons form directing plaintiff to appear before the Akron Municipal Court to answer to the charges. (*Id*. ¶ 33.) It is plaintiff's belief that Moore "did not consult with a prosecutor" prior

3

to preparing the field arrest/summons form. (*Id*. ¶ 34.) Plaintiff proceeded to trial on the theft charges.

According to plaintiff, defendants failed to come forward with any evidence that tied him to the theft of any property from Miller-South, or even establish that the locks found in his establishment came from the high school. Following a jury trial, the municipal court granted plaintiff's motion for judgment of acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure. The order of acquittal was docketed on November 23, 2015. (*Id*. ¶ 52.)

The present lawsuit followed in state court. On December 22, 2016, defendants removed the action to federal court. (Doc. No. 1 (Notice of Removal).) On December 29, 2016, Moore moved to dismiss the claims against him under Rule 12(b)(6). In response to the motion, plaintiff timely filed an amended complaint. Plaintiff's pleading, as amended, includes claims for malicious prosecution and abuse of process, tortious interference with employment and/or contract, defamation and slander, and intentional infliction of emotional distress. He also seeks to hold APS liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). (*See* Am. Compl.) Generally, these claims all revolve around the theory that defendants conspired to bring false criminal charges against him for the purpose of securing his termination.

## II. STANDARD OF REVIEW

Because the parties devoted considerable space in their briefs to the proper standard for reviewing Rule 12(b)(6) motions, it is worthwhile to revisit the standard in some detail. A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading. *Davis H. Elliot Co., Inc. v. Caribbean Util. Co., Ltd.*, 513 F.2d 1176, 1182 (6th Cir. 1975). All allegations of fact by

4

the non-moving party are accepted as true and construed in the light most favorable to that party. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998) (citing *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990)). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Nor is the Court required to accept as true complaint allegations that are contradicted by public records and other evidentiary materials of which the Court may take judicial notice. *See Moody v. CitiMortgage, Inc.*, 32 F. Supp. 3d 869, 874-75 (W.D. Mich. 2014) ("court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint") (quotation marks and citations omitted); *see also Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) ("if a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document") (quotation marks and citation omitted).

The sufficiency of the pleading is tested against the notice pleading requirements of Fed. R. Civ. P. 8. Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although this standard is liberal, Rule 8 still requires a complaint to provide the defendant with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although the plausibility standard is not equivalent to a "'probability requirement' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).[2] A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true (even if doubtful in fact)[.]" *Twombly*, 550 U.S. at 555-56 (citations, including internal citations, omitted).

It is plaintiff's position that defendants are attempting to hold him to a higher standard at the motion to dismiss stage than that dictated by the Supreme Court in *Twombly* and *Iqbal*. (Akron MTD Opp'n ["Defendants here, which has become typical, filed a Motion to Dismiss seeking to '*Twombly* Plaintiff with *Iqbal*.'"] at 207[3].) Specifically, he accuses defendants of advocating for the standard of review appropriate on summary judgment. (*Id.* at 206.) It is plaintiff's position that his amended pleading satisfies the pleading requirements of Rule 8 and 9(b), and, as such, dismissal at this juncture is not appropriate.

### III. DEFENDANT MOORE'S MOTION TO DISMISS THE COMPLAINT

As set forth above, defendant Moore previously moved for dismissal of the original complaint. Rule 15(a)(1)(B) permits amendment of pleadings as a matter of course within 21 days of service of a motion under Rule 12(b). According to Rule 15's advisory notes, the

---

[2] In this respect, plaintiff is incorrect when, relying on a dictionary definition of "plausible," he equated it with a mere possibility of truth. (*See* Akron MTD Opp'n at 207, quoting Cambridge Dictionary definition of "plausible" as "possibly true[.]"). "[S]omething beyond the mere possibility of [liability] must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Twombly,* 550 U.S. at 557-58 (quotation marks and citations omitted).

[3] All record page number references are to the page identification number generated by the Court's electronic docketing system.

provision allowing for an amendment, as a matter of right, within 21 days of the filing of a motion to dismiss, forces "the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion [to dismiss]." 2009 Advisory Notes to Rule 15(a)(2). Plaintiff timely amended his complaint under Rule 15(a)(2), and filed an opposition to Moore's dispositive motion contending that his amendment cured the alleged pleading deficiencies identified in Moore's motion. Defendant Moore failed to file a reply, or otherwise suggest that the amended complaint did not resolve the issues raised in his motion. Accordingly, his motion to dismiss the original complaint is denied as moot.

### IV. AKRON DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

The Akron defendants insist that all of the claims asserted against them in the amended complaint fail to meet the minimum pleading requirements of Rule 8, and where applicable, Rule 9. They also maintain that the individual defendants, to the extent they are sued in their individual capacities, are entitled to qualified immunity, and that all defendants are immune from liability as to the state law claims under Ohio Rev. Code § 2744.

### A.      Malicious Prosecution

Plaintiff brings his malicious prosecution claim under federal and state law. "The Sixth Circuit recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment, which encompasses wrongful investigation, prosecution, conviction, and incarceration." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quotation marks and citation omitted). "A malicious-prosecution claim under § 1983 has four elements: first, that the defendant 'made, influenced, or participated' in the decision to prosecute the plaintiff; second, that the prosecution lacked probable cause; third, that the criminal proceeding caused a

deprivation of the plaintiff's liberty apart from the initial seizure; and fourth, that the criminal proceeding resolved in the plaintiff's favor." *Martin v. Maurer*, 581 F. App'x 509, 511 (6th Cir. 2014) (citing *Sykes*, 625 F.3d at 308-09). The elements are similar under Ohio law. *See Trussell v. Gen. Motors Corp*., 559 N.E.2d 732, 735 (Ohio 1990) (recognizing three elements: (1) malice in instituting or continuing prosecution; (2) lack of probable cause; and (3) termination of the prosecution in favor of the criminal defendant) (quotation marks and citation omitted); *see Harris v. Bornhorst*, 513 F.3d 503, 520 (6th Cir. 2008) (citations omitted). The parties agree that both federal and state law require the absence of probable cause.

Defendants argue that the amended complaint concedes the existence of probable cause and therefore, effectively defeats any claim for malicious prosecution. Particularly, the Akron defendants point to the amended complaint's reference to and reproduction of the officer narrative section of Moore's incident report. In particular, defendants highlight the fact that Moore wrote that Beverlin told him that several people reported plaintiff had a box of locks at his business that looked like the ones missing from the high school, and that the high school's master key opened the allegedly stolen locks. Based on the inclusion of the officer's narrative in the amended complaint, the Akron defendants argue that plaintiff's "allegations demonstrate[] the *existence*—rather than lack—of probable cause." (Akron defendants' MTD at 156, emphasis in original.)

The Akron defendants' argument is premised upon a faulty reading of the amended complaint. Paragraph 28 provides that, "[i]n the aforesaid incident report, Defendant Moore in his narrative wrote what John Beverlin, the 'Rp' (reporting party), told him" about the locks. (Am. Compl. ¶ 28.) The paragraph then repeats the contents of the narrative. It does not allege

that the content of the narrative is true; rather, it merely states what Beverlin purportedly told Moore and what Moore wrote in his report. As such, it does nothing more than set forth the sequence of events that ultimately led to the filing of the incident report and the resulting criminal complaints. Indeed, other allegations in the amended complaint make clear that plaintiff does not accept the facts contained in the incident report as true. For example, plaintiff alleges that, contrary to Beverlin's representations, the master key from Miller South "*did not* open the locks." (*Id*. ¶ 21, emphasis added; *see* ¶ 31 ["The allegations in the narrative report were false, and wrongfully published by Defendant Andre Moore . . ."].) He also alleges that defendants lacked any evidence that could tie the locks to Miller South.[4] (*Id*. ¶¶ 44-46.)

The Akron defendants further emphasize that plaintiff sets forth in his amended complaint that he admitted to defendant Moore that the locks came from APS. (Akron MTD at 156, citing Am. Compl. ¶ 36.) Again, defendants do not fairly represent the amended complaint. What the complaint allegation actually states is that, when defendant Moore advised plaintiff of the criminal summons, plaintiff informed Moore that the "the locks were not stolen and that he had permission from his supervisor to keep the locks and that they came from the old Litchfield Middle School which had been torn down, and *not from Miller South*." (Am. Compl. ¶ 36, emphasis added.) Far from an admission of guilt, plaintiff's comment to Moore suggested that these were not the locks that were allegedly stolen from the high school and that he had a lawful reason to possess them.

---

[4] Plaintiff alleges that he initiated his own investigation and "obtained the purported records regarding" the locks and "discovered" that the records did not establish either the time the locks were purchased or ownership. (Am. Compl. ¶ 44; *see also* ¶ 24.) He also advances factual allegations that call into question the chain of custody for the locks. (*Id*. ¶ 22.) Further, plaintiff pleaded facts demonstrating students purchase the locks directly from the PTA, making them the student's property. (*Id*. ¶ 25.) Collectively these facts, if believed, discredit Beverlin's statement that the numbers on the locks confirmed that they were registered to Miller South. (*See id*. ¶ 28.)

The Akron defendants also rely on an introductory complaint paragraph that begins by stating that defendants initiated criminal proceedings against plaintiff "[d]espite there being very little evidence to support the allegations . . . ." (*Id.* ¶ 2.) In so pleading, they insist that plaintiff "admits there was evidence (albeit very little) to support the criminal allegations." (Akron MTD at 156, citing Am. Compl. ¶ 2.) "Probable cause to arrest someone exists if 'the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense.'" *Atkins v. Twp. of Flint*, 94 F. App'x 342, 347 (6th Cir. 2004) (quoting *Diamond v. Howd*, 288 F.3d 932, 936-37 (6th Cir. 2002) (further citation omitted)). The existence of "very little evidence" hardly establishes, as a matter of law, that there was reasonably trustworthy information that would warrant a prudent man in believing that plaintiff had stolen the locks.[5]

The Akron defendants further claim that plaintiff's state law malicious prosecution claim fails because the factual allegations do not support the necessary element of "malice." They insist that the amended complaint is limited to conclusory allegations that the defendants acted with the requisite malicious intent. (Akron MTD at 157, citing Am. Compl. ¶¶ 67, 72.)

Under Ohio law, "'[m]alice is the state of mind under which a person intentionally does a wrongful act without a reasonable lawful excuse and with the intent to inflict injury or under circumstances from which the law will infer an evil intent. For purposes of malicious prosecution it means an improper purpose, or any purpose other than the legitimate interest of bringing an

---

[5] The same paragraph also provides that there was "little or no evidence" to support a criminal prosecution against plaintiff for theft. (Am. Compl. ¶ 2.) Though the pleading suffers from a lack of precision, when viewed in a light most favorable to plaintiff, it cannot be said to concede probable cause.

offender to justice.'" *Hamilton v. Best Buy*, No. 19890, 2003 WL 22681383, at *3 (Ohio App. Ct. Nov. 14, 2003) (quoting *Criss v. Springfield Twp.*, 564 N.E.2d 440, 443 (Ohio 1990)). "Malice may be inferred from the absence of probable cause." *Anderson v. Eyman*, 907 N.E.2d 730, 737 (Ohio 2009) (citation omitted); *see Thacker v. City of Columbus*, 328 F.3d 244, 261 (6th Cir. 2003) ("Although malice is an essential element in actions for malicious prosecution, the want of probable cause is the real gist of the action. Thus, if the lack of probable cause is demonstrated, the legal inference may be drawn that the proceedings were actuated by malice.") (quotation marks and citations, including internal citations, omitted).

Here, the amended complaint alleges that defendants continued their prosecution against plaintiff even though they lacked any evidence that would establish that the locks in question were purchased by, or came from, Miller South. (Am. Compl. ¶¶ 24, 45.) Plaintiff further alleges that, notwithstanding a lack of evidence, defendants pursued the prosecution to use it "to enhance their leverage" in an internal disciplinary proceeding they initiated against plaintiff. (*Id.* ¶¶ 45, 47.) According to the pleading, the defendants acted in concert for the ultimate purpose of interfering with plaintiff's employment with APS, and as retaliation for plaintiff's activity with the union.[6] (*Id.* ¶¶ 47-49.)

Plaintiff has alleged facts that, if believed, would establish that defendants initiated and continued to pursue a criminal prosecution against him for reasons other than to bring a guilty person to justice. Such an ulterior motive would support a finding of malice under Ohio law.

---

[6] As factual support for these allegations, plaintiff points to certain actions by defendants. For example, he claims that defendant Moore appeared at a pretrial conference and represented that plaintiff was "obviously guilty and that he was simply wasting the time of the Court and Akron Public Schools in not pleading guilty[.]" (Am. Compl. ¶ 38.) Plaintiff further alleges that defendant Wammes made false statements in the disciplinary proceedings for the purpose of harassing plaintiff. (*Id.* ¶ 50.)

Additionally, defendants have not demonstrated that plaintiff has failed to allege facts that would support a finding of a lack of malice. An absence of probable cause would also support an inference of malice. *See Thacker*, 328 F.3d at 261.

While it may be a close call—and the factual support for these claims is certainly thin— the Court concludes that these facts are sufficient to withstand a Rule 12(b)(6) motion on plaintiff's federal and state law malicious prosecution claims. Whether discovery will support any of these factual allegations remains to be seen.

      **B.**       **Remaining Claims**

The same facts that form the basis for plaintiffs' malicious process claims also serve as the foundation for the remaining claims pleaded in the amended complaint. Because at least a part of this case survives on the pleadings, the Court finds it unnecessary to consider defendants' other challenges to the amended complaint now inasmuch as discovery will proceed the same regardless of which particular theories of liability are in play. Defendants shall have leave to renew their remaining arguments on summary judgment when the Court may consider them against the backdrop of a fully developed record.

Nonetheless, the Court recognizes that plaintiff may face a difficult hurdle on summary judgment. In addition to the arguments advanced by defendants, the Court anticipates other potential problems with plaintiff's claims. Specifically, the Court notes that Ohio law is far from settled on the question of whether statements to law enforcement may support state law claims of malicious prosecution and defamation. *See Dehlendorf v. City of Gahanna*, 786 F. Supp. 2d 1358, 1360, 1365 (S.D. Ohio 2011) (finding qualified immunity available for statements made to law enforcement, but noting that some Ohio courts have afforded absolute immunity) (collecting

cases). Moreover, it is questionable whether plaintiff's conspiracy claim can be maintained against any individual defendants who are employed by the same entity that employed plaintiff. *See Fitzgerald v. Roadway Express, Inc*., 262 F. Supp. 2d 849, 860 (N.D. Ohio 2003) (a plaintiff cannot maintain a claim for tortious interference by co-workers or supervisors unless he can demonstrate that they acted solely in their individual capacities and that they personally benefited from the alleged interference) (citations omitted). These issues were not briefed by the parties, and, as such, they will be reserved for another day.[7]

**Qualified Immunity**

The individual defendants maintain that, even if the Court refuses to dismiss the claims against them on the merits, the Court should find that qualified immunity shields them from liability for all of the claims brought against them in their individual capacities. The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) (citations omitted). The doctrine "shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen,* 543 U.S. 194, 198, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (citation omitted).

---

[7] In highlighting potential problems with some of plaintiff's claims, the Court is not inviting (and will not accept) further Rule 12(b)(6) briefing from the parties. Neither is the Court signaling how the Court will rule on summary judgment. Rather, the Court is merely suggesting that plaintiff may wish to reassess the wisdom of advancing some of his claims.

Because defendants have raised the qualified immunity defense, plaintiff "bears the burden of showing that defendants are not entitled to qualified immunity." *Gavitt v. Born*, 835 F.3d 623, 641 (6th Cir. 2016) (citing *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015)). "At the pleading stage, this burden is carried by alleging facts making out a plausible claim that defendants' conduct violated a constitutional right that was clearly established at the time of the violation." *Id.* (citation omitted).

While a court may consider the issue of qualified immunity on a motion brought under Fed. R. Civ. P. 12(b)(6), *see Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 677 (6th Cir. 2001), "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015) "Although an [official's] 'entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point' . . . that point is usually summary judgment and not dismissal under Rule 12." *Id.* at 433-34 (quoting *Vakilian v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003)) (further citations, including internal citations, omitted). This is especially true in situations, such as the present case, where the complaint allegations raise issues of malice and improper motive. The fact-intensive nature of the qualified immunity analysis makes them poor candidates for consideration before discovery has taken place. *Proctor v. Applegate*, 661 F. Supp. 2d 743, 761-62 (E.D. Mich. 2009) (citations omitted); *see also Gavitt*, 835 F.3d at 640 ("if the qualified immunity questions presented are fact-intensive, the record may not be adequately developed to evaluate the defense at the pleading stage under Rule 12(b)(6)") (citing *Wesley*, 779 F.3d at 433-34)). The Court finds that defendants' request for qualified immunity is premature because the

14

record is insufficient for the Court to make the necessary fact-intensive analysis. Defendants may reassert qualified immunity on summary judgment after discovery has taken place.

**V.  CONCLUSION**

For all of the foregoing reasons, the Akron defendants' motion to dismiss is denied in part, and denied without prejudice in part, and defendant Moore's motion to dismiss is denied as moot.

**IT IS SO ORDERED**.

Dated: July 19, 2017

                                                                           **HONORABLE SARA LIOI**
                                                                           **UNITED STATES DISTRICT JUDGE**